STATE *v.* J. A. SIMMONS

(No. 6836)

Submitted March 10, 1931. Decided March 31, 1931.

*Thomas N. Read,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

LITZ, PRESIDENT:

The defendant, J. A. Simmons, was convicted of second degree murder and sentenced to eight years in the penitentiary under an indictment charging him with the slaying of one William Fox.

On the morning of March 5, 1930, John McFadden discovered a moonshine still being operated by said William Fox, A. L. Givens and one Sears in a ravine surrounded by rugged woodland five or six miles from the city of Hinton. Later in the day, he swore out a warrant before a U. S. Commissioner of Hinton charging Fox, Givens and Sears with operating the still. A posse, composed of E. B. Fox (sheriff of Summers County), T. F. Yost and F. O. Posten, members of the state police, and defendant J. A. Simmons (a patrolman of Hinton), was promptly organized to execute the warrant. The officers, with McFadden as guide, left Hinton the afternoon of the same day in an automobile for the scene of the still. Disembarking about one-half mile therefrom they continued afoot. On arriving within three or four hundred yards

of the still the party separated; Simmons and Yost going by circuitous route five or six hundred yards below, while the others advanced directly toward, the still. The sheriff, finding the still in operation, attended by Fox and Givens, commanded them to surrender. Givens submitted and was placed under arrest. Fox, ignoring the command, fled in the general direction of Yost and Simmons. The sheriff and Posten, pursuant to an understanding between the officers at the time of separating, fired two or three shots as a signal to Yost and Simmons of the escape. On account of the forest and the ruggedness of the ground over which Fox ran, he evidently did not observe Yost or Simmons, nor did either of them see him until the three were within seventy-five or a hundred yards of each other. According to the testimony of Simmons and Yost (the latter of whom testified at the instance of the state) they called to Fox to halt (Simmons at about the same time firing two shots "straight up in the air"), but he continued running; and when within forty or fifty yards of them, while his body below the waist was hidden behind a bank, suddenly hesitated and discharged two shots at Simmons and Yost from a pistol held in his right hand. They immediately returned the fire, Yost shooting twice and Simmons once. Fox, disappearing, fell about twenty yards beyond the brow of the hill pierced with a bullet, which entered the back and made an exit near the heart, causing almost instant death. Yost, Simmons and Posten found near the right hand of the deceased a 32-caliber pistol with three empty shells. Yost and Simmons were armed with 38-caliber pistols loaded with the same type of cartridges, so that it is impossible to determine which fired the fatal shot. Simmons and Yost testified that they could not, in their opinion, have overtaken Fox. Eleven gallons of moonshine liquor and a quantity of mash were found at the still.

The main contention of the defense is that the evidence does not support the verdict. It is contended also that the court improperly refused an instruction for defendant which would have directed his acquittal in event the jury were unable to determine whether he or Yost fired the fatal shot. The propriety of this ruling depends upon the question of

whether the evidence would sustain a conviction of Simmons and Yost. As they apparently were acting in concert, each would be responsible for the acts of the other. After thoroughly considering the evidence, the court has concluded that it is insufficient to support a conviction of either Yost or Simmons. The testimony of the eye-witnesses is not, in the opinion of the court, materially discounted by the evidence referred to in the written opinion of the trial court judge, as follows: (1) a general statement of the sheriff to the effect that he heard five or six shots in the direction of the tragedy, without distinguishing any difference in the reports noted by other witnesses; (2) statement of the widow of the deceased that he was left-handed, without saying whether he was ''left-handed'' in grasping objects with one hand or with both hands; and (3) statement of Givens that he did not see William Fox with a pistol before the raid. (The writer hesitates to disturb the verdict.)

The judgment of the circuit court is reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*